IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | | |
|---|---|---|
| SPE GO HOLDINGS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO.   1:16-cv-00010 |
| | ) | |
| W&O CONSTRUCTION COMPANY, | ) | JURY DEMAND |
| INC., and THE CITY OF | ) | |
| SPRING HILL, TENNESSEE, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF SPE GO HOLDINGS, INC.'s MEMORANDUM OF LAW IN SUPPORT OF RESPONSE IN OPPOSITION TO W&O CONSTRUCTION COMPANY, INC'S <u>PARTIAL MOTION TO DISMISS</u>**

This Court should deny the Partial Motion to Dismiss filed by Defendant W&O Construction Company, Inc. ("W&O"). Plaintiff SPE GO Holdings, Inc. ("Plaintiff") has alleged facts which, taken as true, state a claim for relief against W&O for negligence. The Tennessee Supreme Court has held, on virtually identical facts, that a contractor hired by a municipality to construct improvements within an easement may be liable to the easement grantor for negligence. The economic loss doctrine does not bar Plaintiff's negligence claim because Plaintiff has alleged that it suffered physical damage to its property as a result of W&O's tortious acts, and the Tennessee Supreme Court likely would limit the economic loss doctrine to cases involving products liability or contracts for the sale of goods.

**SUMMARY OF FACTUAL ALLEGATIONS PLED
THAT ARE RELEVANT TO W&O'S PARTIAL MOTION TO DISMISS**

From May 28, 2009 until June 12, 2015, Plaintiff owned real property known as King's Creek Golf Club and located at 3901 Kedron Road, Spring Hill, Tennessee 37174 (the "Golf Course"). Complaint ("Compl."), ¶ 7. The Golf Course is certified as an Arnold Palmer

1

Signature designed course. Compl., ¶ 9. Certification as an Arnold Palmer Signature designed course requires that the Golf Course be built to certain exacting specifications, using particular materials, design principles and product standards. Detailed layout, grading, drainage, and landscaping plans must be strictly complied with to maintain Arnold Palmer Signature certification. Compl., ¶ 10.

In 2014, the City of Spring Hill ("Spring Hill") solicited bids for an extension of the sewer line that runs parallel to Rutherford Creek through the Golf Course (the "Project"). Compl., ¶ 14. Spring Hill awarded the bid for the Project to W&O. Compl., ¶ 15. Spring Hill and W&O entered into a Construction Contract for the construction of the Project. Compl., ¶ 16. The Construction Contract provides that Phase I of the Project, the phase that affected the Golf Course, would be completed within 120 days. Compl., ¶ 18, 19.

The Construction Contract requires that W&O restore all property affected by construction operations "to their original condition," at its expense. W&O agreed to "make satisfactory and acceptable arrangements with the owners of the damaged property…concerning its repair or replacement or payment of costs incurred in connection with the damage." Compl., ¶ 22. The Construction Contract also requires that the Golf Course be restored by contractors approved by Plaintiff that are familiar with all of the turf and irrigation systems of the Golf Course. Compl., ¶ 23. The Construction Contract was modified by an Addendum which provides that W&O will employ a qualified sod installer and irrigation company approved by Plaintiff and that all reworking, sod replacement, and other items of restoration shall be performed at W&O's expense. Compl., ¶ 25-26. The Addendum also provides that Plaintiff shall have final approval of all restoration work to be performed under the Construction Contract. Compl., ¶ 27.

Spring Hill gave W&O notice to proceed with Phase I of the Project in November 2014. Compl., ¶ 30. Construction of Phase I of the Project required Plaintiff to close nine of the 18 holes of the Golf Course to players. Compl., ¶ 31. Through no fault of Plaintiff and without Plaintiff's consent, Spring Hill and W&O extended the deadline to complete Phase I of the Project from March 2, 2015 to May 4, 2015. Compl., ¶ 33. In March 2015 W&O reduced the number of daily workers on the Project site to three laborers and one equipment operator, with one piece of equipment. Compl., ¶ 34. Spring Hill and W&O failed to complete Phase I of the Project by the extended deadline of May 4, 2015. Compl., ¶ 36.

W&O expressly refused to use a golf course architect or Plaintiff-approved grading contractor to complete the restoration work on the Golf Course, instead indicating that it would perform the restoration work itself. Compl., ¶ 38. W&O also refused to use a qualified sod installer having experience in golf course restoration work. Compl., ¶ 39. W&O has never restored a golf course, much less an Arnold Palmer Signature designed course. Compl., ¶ 40-41.

After W&O failed to complete Phase I of the Project on time and refused to engage and pay the fees and expenses of Plaintiff-approved golf course restoration contractors, Plaintiff hired Turf Company, a business having significant experience restoring golf courses, to complete the restoration work at the Golf Course. Compl., ¶ 42. Turf Company charged Plaintiff a total of $157,000 for its restoration work. Compl., ¶ 43. Plaintiff demanded that W&O and Spring Hill reimburse it for the $157,000 charged by Turf Company, but W&O and Spring Hill failed and refused to pay such sum to Plaintiff. Compl., ¶ 45. Phase I of the Project was not completed until August 7, 2015. Compl., ¶ 46. Because Phase I of the Project was not completed on time, Plaintiff suffered damages including, among other things, lost memberships and outings, numerous lost rounds of golf, and other expenses related to course maintenance. Compl., ¶ 50.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal,* 556 U.S. 662, 677-78 (2009). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating the sufficiency of the complaint, the court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). "A complaint will not be dismissed pursuant to Rule 12(b)(6) unless there is no law to support the claims made, the facts alleged are insufficient to state a claim, or there is an insurmountable bar on the face of the complaint." *Zundel v. Mukasey*, 2009 WL 3785093, *4 (E.D. Tenn. 2009) (copy attached).

## ARGUMENT

I.  **Plaintiff's Complaint states a claim for negligence against W&O.**

W&O argues that Plaintiff's cause of action for negligence against W&O should be dismissed because, as a matter of law, W&O owed no duty to Plaintiff. W&O has set up a straw man. W&O argues that if it owed any duty to Plaintiff, that duty would arise under either the Construction Contract or the Sewer Easement[1]. W&O then knocks down the straw man by asserting that it owed no duty to the Plaintiff because the Construction Contract did not obligate W&O to complete the Project by a certain deadline.

---

[1] See Compl., ¶ 28, Exh. 3.

The first flaw in W&O's argument is that the contracts are not the sole possible source of W&O's duty to Plaintiff. Tennessee Supreme Court precedent unequivocally establishes that a contractor may be liable to an easement grantor for negligence, even in the absence of contractual privity. *See Oman Constr. Co. v. Tenn. Cent. Ry. Co.,* 370 S.W.2d 563 (Tenn. 1963). The facts of *Oman* are virtually identical to the facts of this case. In *Oman*, the plaintiff was a railroad that owned property in Nashville. 370 S.W.2d at 564. The City of Nashville contracted with the railroad for a sewer easement running underneath the railroad's freight depot. *Id*. at 565. The sewer easement provided that all expenses in connection with the construction of the sewer, and all damages to the railroad's property as a result of the construction or operation of the sewer, would be borne by the city and its agents or contractors. *Id*.

The City of Nashville then contracted with a construction company ("Oman") to build the sewer. *Oman*, 370 S.W.2d at 566. The City of Nashville-Oman contract, like the Construction Contract in this case, provided that Oman would be responsible for all damage to the railroad's property that resulted from the construction, and would repair and restore the property to a condition similar or equal to that existing before the construction. *Id*. As in this case, there was no contract between Oman and the railroad. *See id.* at 573-74.

The railroad company sued the City, Oman, and two other contractors, alleging that Oman failed to properly construct the sewer. *Id*. at 568. Just as Plaintiff has done in this case, the railroad alleged causes of action against Oman both for breach of contract and for negligence. *Id*. And just as W&O has done in this case, Oman demurred to both the breach of contract and negligence claims, arguing that it was not liable to the railroad for breach of contract because the railroad was not a party to its contract with the City of Nashville, and it was not liable to the railroad for negligence based on the economic loss doctrine. *Id*. at 569, 575. The trial court

5

overruled Oman's demurrer, and both the Tennessee Court of Appeals and the Tennessee Supreme Court affirmed this decision of the trial court. *Id*. In so doing, the Tennessee Supreme Court recognized that "the existence of a contract may furnish the occasion for a tort obligation." *Id*. at 575.

*Oman* is completely on point with the facts of this case. A Tennessee municipality negotiates a sewer easement with a landowner, and enters into a sewer-construction contract with a contractor. The contractor is negligent in the construction of the sewer, which causes the landowner to incur damages. The landowner sues the contractor for breach of contract and negligence. The contractor moves to dismiss the negligence count on the bases that it owes no duty to the landowner and cannot be sued in both contract and tort. Given these facts, the Tennessee Supreme Court has held that the landowner states a claim for relief against the contractor for negligence. This Court should apply *Oman* and deny W&O's Partial Motion to Dismiss.

W&O's argument also is flawed because it assumes that the only breach alleged by Plaintiff is that W&O failed to complete Phase I of the Project timely. On the contrary, Plaintiff has also alleged that W&O breached a duty to repair all damage to Plaintiff's property caused by its work. W&O refused to use contractors approved by Plaintiff and insisted on attempting to restore the Golf Course itself, despite that it had never repaired any golf course, much less an Arnold Palmer Signature certified course. W&O breached a duty it owed to Plaintiff to take care to restore the Golf Course to the precise standards required to retain Arnold Palmer Signature certification.

Finally, W&O's argument is flawed because it would require this Court to grant it the benefit of a favorable inference that is not supported by the facts as pled in the Complaint.

W&O contends that it owed no duty to Plaintiff under the Construction Contract to complete the Project timely because the deadlines in the Construction Contract could be extended by agreement. The relevant facts as pled in the Complaint are as follows:

- The Construction Contract requires that Phase I of the Project be completed within 120 days. Compl, ¶ 19.

- Spring Hill and W&O agreed in the Construction Contract that time is of the essence. Compl., ¶ 17.

- Spring Hill gave W&O notice to proceed with Phase I of the Project in November 2014. Compl., ¶ 30.

- Through no fault of Plaintiff and without Plaintiff's consent, the deadline to complete Phase I of the Project was extended by Spring Hill and W&O from March 2, 2015 to May 4. 2015.

- Spring Hill and W&O failed to complete Phase I of the Project by May 4, 2015.

- Phase I of the Project was not completed until August 7, 2015.

Notwithstanding the foregoing facts, W&O argues that, as a matter of law, it could not have breached its duty to complete Phase I timely. In so arguing, W&O asks this Court to infer that, because the Construction Contract allows for extensions of time, and one extension to May 4, 2015 was granted, that further extensions were granted through the eventual completion date of August 7, 2015. There is no support for this argument in the record. To reach this conclusion would require the Court to draw a factual inference in favor of W&O, the party moving for dismissal under Rule 12(b)(6). That, of course, is the exact opposite of the applicable legal standard. Plaintiff is entitled to the benefit of all reasonable inferences that can be drawn from the well-pleaded facts of the Complaint. Under that standard, the Court cannot conclude that, as a matter of law, W&O did not breach the Construction Contract. Plaintiff states a claim for relief against W&O for negligence.

7

## II. Plaintiff's claim for negligence against W&O is not barred by the economic loss doctrine.

W&O also argues that Plaintiff's claim for negligence must be dismissed pursuant to the economic loss doctrine. The economic loss doctrine does not apply to Plaintiff's claim for negligence against W&O, however.

The economic loss doctrine provides that, absent privity of contract, a party may not recover in negligence <u>absent personal injury or property damage</u>. *Acuity v. McGhee Eng'g, Inc.*, 297 S.W.3d 718, 734 (Tenn. Ct. App. 2008). But the doctrine does not apply to Plaintiff's negligence claim against W&O because Plaintiff has alleged that W&O's negligence damaged its property. The economic loss doctrine simply does not apply to these facts.

The cases cited by W&O in its Memorandum of Law do not support its argument that the economic loss doctrine applies here. For example, in *Ham v. Swift Transp. Co., Inc.*, 694 F.Supp.2d 915 (W.D. Tenn. 2010), the plaintiffs were a putative class who purchased a commercial driving training course from the defendants. The plaintiffs alleged that the defendants failed to comply with federal and state regulations governing such tests, and that as a result, the plaintiffs suffered losses because they lost their commercial driving licenses and were required to retake the training with another firm. *Ham*, 694 F.Supp.2d at 917-18. The plaintiffs asserted claims against the defendants for, among other things, negligence, gross negligence and negligent supervision. *Id.* at 921. The defendants moved to dismiss the negligence claims under Rule 12(b)(6), citing the economic loss doctrine. *Id.* In the absence of applicable precedent from the Tennessee Supreme Court, the district court reviewed cases from the Tennessee Court of Appeals and opined that the Tennessee Supreme Court would not apply the economic loss doctrine to cases involving the provision of services. *Id.* at 922. Accordingly, the district court denied the motion to dismiss. *Id.* at 923.

8

This Court has cited *Ham* with approval. *Town of Smyrna, Tenn. v. Mun. Gas. Auth. of Ga.*, __ F.Supp.3d ___, 2015 WL 5306058, *13 (M.D. Tenn. 2015) (rejecting defendant's argument that the economic loss doctrine precluded the plaintiff from recovering for breach of fiduciary duty, where plaintiff purchased goods and services from defendant under contract); *see also N5ZX Aviation, Inc. v. Bell*, 2011 WL 5520973, *4 (M.D. Tenn. 2011) (copies attached). Plaintiff acknowledges that the United States District Court for the Eastern District of Tennessee has expressed disagreement with the *Ham* line of cases. *See Ladd Landing, LLC v. Tenn. Valley Auth.*, 874 F.Supp.2d 727 (E.D. Tenn. 2012). *Ladd Landing* is distinguishable from this case, however, because the plaintiffs in *Ladd Landing* suffered no damage to their property as a result of the defendant's alleged tortious acts. 874 F.Supp.2d at 729. Here, Plaintiff's property was damaged as a direct result of W&O's tortious acts. Accordingly, Plaintiff's negligence claim is not barred by the economic loss doctrine.

W&O's argument also is inconsistent with the intent of the economic loss doctrine. The theory supporting the doctrine is that parties who may avail themselves of contractual remedies should be required to live by their contracts rather than pursue tort actions for purely economic losses arising out of the contract. *McLean v. Bourget's Bike Works, Inc.*, 2005 WL 2493479, *5 (Tenn. Ct. App. 2005). But just as W&O has cited the economic loss doctrine to attempt to deny liability to Plaintiff in tort, W&O also has denied that Plaintiff is entitled to enforce the Construction Contract as a third-party beneficiary. *See* Compl., ¶ 59; Answer of W&O Construction Company, Inc., ¶ 59. W&O, therefore, wants to have it both ways--arguing that the economic loss rule bars Plaintiff's tort claims, and also that Plaintiff cannot enforce the contract between W&O and the City of Spring Hill. Taken to its logical conclusion, W&O argues that it was entitled to come onto Plaintiff's property, delay construction of Phase I of the Project

9

indefinitely, and improperly restore Plaintiff's property in a manner inconsistent with covenants and representations in the Construction Contract that clearly were intended to benefit Plaintiff, all without liability to Plaintiff under any theory. This argument is inconsistent and inequitable, and this Court should reject it.

## CONCLUSION

Under *Oman*, Plaintiff states a claim upon which relief may be granted against W&O for negligence. Plaintiff's negligence claim is not barred by the economic loss doctrine because Plaintiff suffered damage to its property as a result of W&O's tortious acts, and because the economic loss doctrine does not apply to contracts like the Construction Contract in this case. W&O's Partial Motion to Dismiss should be denied.

Dated April 6, 2016

Respectfully submitted,

**NEAL & HARWELL, PLC**

By: /s/ Stephen M. Montgomery
Stephen M. Montgomery, No. 26489
Robert A. Peal, No. 25629
One Nashville Place, Suite 2000
150 Fourth Avenue North
Nashville, TN 37219-2498
615-244-1713
smontgomery@nealharwell.com
rpeal@nealharwell.com

*Counsel for SPE GO Holdings, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served by the Court's CM/ECF system on all parties registered to receive electronic notice in this case on this the 6th day of April, 2016:

| | |
|---|---|
| Gregory L. Cashion | Patrick M. Carter |
| J. Ross Hutchison | Tisher, Wolaver, Free, Carter & Lynn PLLC |
| Smith, Cashion & Orr, PLC | 809 South Main Street |
| 231 3rd Avenue North | Columbia, Tennessee 38401 |
| Nashville, Tennessee 37201-1603 | |

    /s/ Stephen M. Montgomery