UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| SPO GO HOLDINGS, INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>W&O CONSTRUCTION COMPANY, )<br>INC., and THE CITY OF SPRING HILL,)<br>TENNESSEE, )<br>)<br>Defendants. ) | No. 1-16-0010 |

## MEMORANDUM

Pending before the Court is Defendant W&O Construction Company, Inc.'s ("W&O's") Partial Motion to Dismiss (Docket No. 11), to which Plaintiff SPO Go Holdings, Inc. has responded in opposition (Docket Nos. 14 & 15). For the reasons that follow, W&O's motion will be denied.

**I.**

The relevant facts, drawn from Plaintiff's Complaint and accepted as true for present purposes, are as follows:

From May 28, 2009 until June 12, 2015, Plaintiff owned the King's Creek Golf Club ("the golf course") in Spring Hill, Tennessee. The golf course is an Arnold Palmer Signature designed course, meaning that it was built to exacting specifications using particular materials, design principles, and product standards.

In 2014, the City of Spring Hill, Tennessee solicited bids for an extension of the sewer line that runs parallel to Rutherford Creek and through the golf course. The bid was awarded to W&O and those parties entered into a Construction Contract ("the contract"). Additionally, Plaintiff and

1

Spring Hill entered into a "Grant of Sewer Easement" agreement ("the easement") wherein Plaintiff granted Spring Hill a 20-foot permanent gravity sewer line easement for the purpose of constructing, operating, and maintaining the sewer line extension.

The contract provided that Phase I of the Project – the phase that affected the golf course – would be completed within 120 days. It also required that W&O restore all property affected by construction operations to its original condition, and agree to make acceptable arrangements with the owners of damaged property concerning repair or replacement. The contract also required that the golf course be restored by contractors familiar with the turf and irrigation systems. Additionally, the easement (to which B&O was not a signatory) provided that Spring Hill agreed to require its agents and contractors to restore the property to a condition similar or equal to that existing at the time construction began.

The contract was modified by an addendum providing that W&O would employ a qualified sod installer and irrigation company approved by Plaintiff and that all reworking, sod replacement, and other items of restoration would be performed at W&O's expense. The Addendum also provided that Plaintiff would have final approval of all restoration work to be performed under the contract.

In November 2014, W&O was given the go-ahead to begin Phase I. Subsequent construction work required Plaintiff to close nine of the 18 holes on the golf course.

Without Plaintiff's consent, Spring Hill and W&O extended the deadline to complete Phase I of the project from March 2, 2015 to May 4, 2015. However, in March 2015, W&O reduced the number of daily workers on the site to three laborers and one equipment operator, with one piece of equipment. Phase I of the project was not completed by the extended deadline.

2

Upon completion of the project, W&O refused to use a golf course architect or Plaintiff-approved grading contractor to complete the restoration work, indicating instead that it would perform the restoration itself. W&O also refused to use a qualified sod installer with experience in golf course restoration work.

After W&O failed to complete Phase I on time and refused to engage and pay the fees and expenses of Plaintiff-approved golf course restoration contractors, Plaintiff hired Turf Company, a business having significant experience restoring golf courses, to complete the restoration work at the golf course. Turf Company charged Plaintiff a total of $157,000, and Plaintiff demanded that amount from Spring Hill and W&O. Both refused.

Phase I was not completed until August 7, 2015. Because Phase I was not completed on time, Plaintiff suffered damages including, among other things, lost memberships and outings, numerous lost rounds of golf, and other expenses related to course maintenance.

As a result of the foregoing, Plaintiff filed a four-count Complaint, naming as Defendants both Spring Hill and W&O. With respect to the latter, Plaintiff alleges breach of contract and negligence. The negligence claim is the focus of W&O's partial motion to dismiss.

## II.

As a general rule, in considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must take "all well-pleaded material allegations of the pleadings" as true. Fritz v. Charter Township of Comstock, 592 F.3d 718, 722 (6th Cir. 2010). The factual allegations in the complaint "need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." Id. (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009)).

A claim is plausible on its face if the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and this entails showing "more than a sheer possibility that a defendant has acted unlawfully." Ashcroft, 129 S. Ct. at 1949. Thus, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of [its] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations and quotations omitted).

### III.

W&O forwards two arguments in support of its motion to dismiss the negligence claim. First, W&O asserts that Plaintiff improperly relies upon the contract and the easement to create the alleged duty owed by W&O. Second, Plaintiff's negligence claim is barred by the economic loss doctrine. The Court is unpersuaded by either argument.

### A.

"To establish negligence, one must prove: (1) a duty of care owed by defendant to plaintiff; (2) conduct falling below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause." McClung v. Delta Square Ltd. P'ship, 937 S.W.2d 891, 894-95 (Tenn. 1996) (citing, McCall v. Wilder, 913 S.W.2d 150, 153 (Tenn. 1995)). W&O argues that Plaintiff cannot meet these essential elements because it cannot establish a duty owed to it by W&O.

W&O characterizes Plaintiff's claim as "revolving around delay and/or failure to meet a completion date," and argues that its only "involvement on this project [was] limited to its scope of

4

work under the Construction Contract with Spring Hill" and there was "no duty of W&O to [Plaintiff] to complete its work by a specific deadline as the Construction Contract itself provides for extensions of time." (Docket No. 12 at 3-4). As for the easement, W&O notes that it was not a party to it and that, in any event, the easement "makes no mention of time considerations for completion of work and does not incorporate by reference the Construction Contract." (Id. at 4). In short, even though no "'drop dead' deadline was established in either agreement," (id. at 5), Plaintiff seeks to hold Defendant liable under a negligence theory for failing to meet a non-existent deadline.

The question of "the duty which defendant owed plaintiff is a question of law to be determined by the court." McClung, 937 S.W.2d at 895 (citing Pittman v. Upjohn Co., 890 S.W.2d 425, 428 (Tenn. 1994)). "Duty is 'a legal obligation to conform to a reasonable person standard of care in order to protect others against unreasonable risks of harm.'" Cullum v. McCool, 432 S.W.3d 829, 833 (Tenn. 2013) (quoting Satterfield v. Breeding Insulation Co., 266 S.W.3d 347, 355 (Tenn. 2008)). "An unreasonable risk of harm arises and creates a legal duty if the foreseeability and gravity of harm caused by a defendant's conduct outweighs the burdens placed on a defendant to engage in other conduct that would prevent such harm." Id. (citing McCall v. Wilder, 913 S.W.2d 150, 153 (Tenn. 1995)).

As a preliminary matter, W&O's argument that it owed no duty is premised on the incorrect assertion that Plaintiff's complaint stems solely from the fact that W&O failed to complete Phase I of the project in a timely manner. Plaintiff's allegations, however, are broader than that. Timely completion or not, Plaintiff alleges that W&O breached a duty to repair all damage to the golf course caused during construction, and refused to use contractors approved by Plaintiff, choosing

5

instead to do the repairs despite not having the requisite experience. The alleged breach of duty in this regard is the failure to repair the course back to an Arnold Palmer Signature certified course.

Further, W&O's argument assumes as a fact that it did complete the work in a timely fashion, but that is something not shown on the face of the Complaint. Rather, the Complaint alleges the (1) the contract required that Phase I be completed within 120 days; (2) W&O was given the green light in November 2014; (3) the deadline for completion was extended from March 2, 2015 to May 4, 2015; and (4) the project was not completed until August 7, 2015. This Court cannot simply infer that because the contract allowed for extensions and one granted, an additional 90 day extension was also granted.

Finally, on the breach of duty issue, W&O does not acknowledge the Tennessee Supreme Court's decision in Tennessee Supreme Court Oman Construction Company v. Tennessee Central Railway Co., 370 S.W.2d 563, 584 (Tenn. 1963), which stated that "the existence of a contract may furnish the occasion for a tort obligation" under facts quite similar to those presented here. There, a railway sued two construction companies and an engineering consultant for damage to its freight depot that arose due to tunneling and blasting under the depot in constructing a sewer line. Like here, the contract for the sewer work was between the city and the construction company. Also like here, the owner of the property had granted an easement to the city and its contractors to perform the work. And like here, the easement stated that all expense in the construction and for damage to the owner's property as a result of the construction activity was to be borne by the city and its contractors. Notwithstanding those agreements, the Tennessee Supreme Court held that the negligence of the contractor in constructing the tunnel beneath plaintiff's property was an issue for the jury.

6

Dismissal of the negligence claims for lack of the existence of a duty is unwarranted.

**B.**

The economic loss doctrine is "a judicially created principle that reflects an attempt to maintain separation between contract law and tort law by barring recovery in tort for purely economic loss." Lincoln Gen. Ins. Co. v. Detroit Diesel Corp., 293 S.W.3d 487, 488 (Tenn. 2009). In essence, "[t]he economic loss doctrine provides that '[i]n a contract for the sale of goods where the only damages alleged come under the heading of economic losses, the rights and obligations of the buyer and seller are governed exclusively by the contract.'" Messer Griesheim Indus., Inc. v. Cryotech of Kingsport, Inc., 131 S.W.3d 457, 463 (Tenn. Ct. App. 2003) (quoting, Trinity Indus. v. McKinnon Bridge Co., 77 S.W.3d 159 (Tenn. Ct. App. 2001)).

Notwithstanding that "Tennessee's highest court has never addressed whether the economic loss doctrine applies outside the products liability context," Ham v. Swift Transpansportation Company, Inc., 694 F. Supp. 2d 915, 922 (W.D. Tenn. 2010), and that, "[i]n addressing the contours of the doctrine outside of that context, many federal courts have concluded that the doctrine should not be extended beyond cases involving the sale of goods," Lick Branch Unit, LLC v. Reed, 2014 WL 546696, at *16 (E.D. Tenn. 2014), W&O argues that Plaintiff's negligence claims is barred by the economic loss doctrine. In doing so, it acknowledges that "Tennessee Courts have stated that negligent construction claims arising in Tennessee are permitted and are not precluded by the 'Economic Loss Rule,' John Martin Co. v. Morse Diesel, Inc., 819 S.W.2d 428 (Tenn. 1991)," but argues that "a plaintiff may *only* maintain an action for purely economic loss when the claim is based upon negligent supervision or negligent misrepresentation. Amsouth Erectors, L.L.C. v. Skaggs Iron Works, Inc., 2003 WL 21878540 (Tenn. Ct. App. Aug. 5, 2003)(emphasis added)."

7

(Docket No. 12 at 6). Because Plaintiff does not allege negligent supervision or negligent misrepresentation, and because Plaintiff is "seeking purely economic damages in the form of lost profits for not meeting a contractual timeline," W&O asserts that "Plaintiff is seeking to impose additional contractual liability on W&O that was not contemplated for by the original parties to the Contract." (Id. at 7).

W&O's reliance on John Martin and Amsouth Erectors is misplaced. Both were purely economic loss cases. In the in the former, "[t]he issue [wa]s whether a subcontractor who has been fully paid by the owner for the performance of his contractual duties may make a separate claim in tort against a construction manager for economic loss caused by negligent misrepresentations." John Martin, 819 S.W.2d at 429. "[T]he theory of recovery [was] that the defendant negligently supplied information intended for the guidance of others, [and] the plaintiff relied upon the misrepresentation in the performance of his contracted service and experienced business losses as a result." John Martin, 819 S.W.2d at 431.

The latter involved non-payment for work performed during the construction of the Peabody Place Retail and Entertainment Center in Memphis   While W&O cites Amsouth Erectors for the proposition that "a plaintiff may **only** maintain an action for purely economic losses based upon negligent misrepresentation or supervision," it neglects to fully accept the qualifying word "purely," and adds (bolding no less) the word "only." Qualifiers matter: to say a "plaintiff may only maintain an action," is vastly different from saying that a "plaintiff may maintain an action."

"The economic loss doctrine provides that, absent privity of contract, one may not recover in negligence where there is no injury to person or property." Acuity v. McGhee Eng'g, Inc., 297 S.W.3d 718, 734 (Tenn. Ct. App. 2008) (citing United Textile Workers of Am. v. Lear Siegler

8

Seating Corp., 825 S.W.2d 83, 87 (Tenn. Ct. App.1992)); see also, Lincoln General, 293 S.W.3d at 491 (even with the economic loss doctrine "deterrence is adequately promoted by existing law that permits tor recover for personal injury and damage to property other than the product itself"). Hearkening back to the reason for the doctrine, it should be noted that

> the owner of a defective product that creates a risk of injury and was damaged during a fire, a crash, or other similar occurrence is in the same position as the owner of a defective product that malfunctions and simply does not work. It follows that the remedies available to these similarly situated product owners should derive from the parties' agreements, not from the law of torts, lest we disrupt the parties' allocation of risk. . . . To hold otherwise would make it more difficult for parties to predict the consequences of their business transactions, the cost of which ultimately falls on consumers in the form of increased prices.

Lincoln Gen. Ins. Co. v. Detroit Diesel Corp., 293 S.W.3d 487, 491 (Tenn. 2009).

Plaintiff's negligence claim is not barred by the economic loss doctrine. While it seeks lost profits, Plaintiff also claims it suffered substantial damage to its property as a result of W&O's negligence. Moreover, and although there is at least one case to the contrary, Ladd Landing, LLC v. Tennessee Valley Authority, 874 F. Supp. 2d 727 (E.D. Tenn. 2012), some federal district judges predicting Tennessee law have held that the economic loss doctrine does not extend to contracts for the provision of services, see, Ham, 694 F. Supp. 2d at 921-923 and Lott v. Swift Transportation, Inc., 694 F. Supp.2d 923, 930-31 (W.D. Tenn. 2010).

## IV.

For the reasons set forth above, an appropriate Order denying W&O's Partial Motion to Dismiss will be entered.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE