UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION


SPE GO HOLDINGS, INC.                )
                                     )
        *Plaintiff*,                 )
                                     )
v.                                   )        No.    1:16-cv-00010
                                     )
W&O CONSTRUCTION COMPANY,            )        Judge Wilson
INC., and THE CITY OF SPRING HILL,   )
TENNESSEE,                           )        JURY DEMAND
                                     )
        *Defendants*.                )

---

### PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT W&O CONSTRUCTION COMPANY, INC.'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, A NEW TRIAL

---

Plaintiff SPE GO Holdings, Inc. respectfully submits this Response in Opposition to Defendant W&O Construction Company, Inc.'s ("W&O") Renewed Motion for Judgment as a Matter of Law, or in the Alternative, a New Trial (D.E. 113).

# TABLE OF CONTENTS

Page

I.     INTRODUCTION..................................................................................................1

II.    LEGAL STANDARD ...........................................................................................1

III.   W&O'S MISSTATEMENTS OF THE TRIAL RECORD........................................2

IV.    ARGUMENT .......................................................................................................12

       A.   There Was Sufficient Evidence of Plaintiff's Third-Party Beneficiary Status......12

            1.   *The Court Did Not Err in Submitting Plaintiff's Third-Party Beneficiary Claim to the Jury* ..................................................13

            2.   *The Construction Contract Does Not Exclude Third-Party Beneficiaries* ..................................................15

            3.   *Defendants Intended to Recognize Plaintiff's Right to Performance* ........15

            4.   *W&O's Performance Satisfied an Obligation Spring Hill Owed to Plaintiff* ..................................................16

       B.   There Was Sufficient Evidence for the Jury to Find that W&O Breached the Construction Contract ..................................................17

            1.   *The Jury Heard Ample Evidence of W&O's Material Breaches* ..............17

            2.   *Plaintiff Gave W&O Sufficient Notice and Opportunity to Cure* .............19

            3.   *There Was Sufficient Evidence of Plaintiff's Damages* ...........................20

       C.   W&O's Motion for New Trial Should be Denied .................................................22

V.     CONCLUSION ...................................................................................................23

i

# TABLE OF AUTHORITIES

**Cases:**                                                                  **Page**

*Action Ads, Inc. v. William B. Tanner Co.*,
   592 S.W.2d 572 (Tenn. Ct. App. 1979) ................................................................20

*Allied Waste N. Am., Inc. v. Weinberg, Wheeler, Hudgins, Gunn & Dial, LLC*,
   2016 WL 7157609 (M.D. Tenn. 2016) ................................................................22

*Bar's Prods., Inc. v. Bars Prods. Int'l Inc.*,
   662 F. App'x 400 (6th Cir. 2016) ................................................................ 13-14

*Buice v. Scruggs Equip. Co.*,
   267 S.W.3d 119 (Tenn. 1953) ................................................................21

*Conwood Co. L.P. v. United States Tobacco Co.*,
   290 F.3d 768 (6th Cir. 2002) ................................................................1

*Cummins v. Brodie*,
   67 S.W.2d 759 (Tenn. Ct. App. 1983) ................................................................20

*E.E.O.C. v. New Breed Logistics*,
   783 F.3d 1057 (6th Cir. 2015) ................................................................13

*Fed. Ins. Co. v. Winters*,
   354 S.W.3d 287 (Tenn. 2001) ................................................................17

*Forrest Const. Co., LLC v. Laughlin*,
   337 S.W.3d 211 (Tenn. Ct. App. 2009) ................................................................19

*Gray v. Toshiba Am. Consumer Prods., Inc.*,
   263 F.3d 595 (6th Cir. 2001) ................................................................2

*Moore Const. Co. v. Clarksville Dept. of Elec.*,
   707 S.W.2d 1 (Tenn. Ct. App. 1985) ................................................................13, 15

*N.L.R.B. v. Downslope Indus., Inc.*,
   676 F.2d 1114 (6th Cir. 1982) ................................................................22

*Owner-Operator Indep. Drivers Ass'n, Inc. v. Concord EFS, Inc.*,
   59 S.W.3d 63 (Tenn. 2001) ................................................................ 13, 15, 16, 23

*Salley v. Pinckney Co.*,
   852 S.W.2d 240 (Tenn. Ct. App. 1992) ................................................................20

*United States v. Walton,*
    909 F.2d 915 (6th Cir. 1990) ................................................................................. 23

*Wheaton v. N. Oakmont Med. Ctr.,*
    2006 WL 44163 (E.D. Mich. Jan. 6, 2006)............................................................................2

## **Statutes/Rules:**

Fed. R. Civ. P. 50 ................................................................................................... *passim*

Fed. R. Civ. P. 61 .....................................................................................................................23

Local Rule 7.01 ..........................................................................................................................2

# I.    INTRODUCTION

This case is about who is required to bear the losses Plaintiff suffered as a result of a sewer line extension project (which required closing nine holes of Plaintiff's golf course) being completed five months late.  After two and a half days of trial (in which Plaintiff presented the testimony of eight witnesses and introduced at least eighteen exhibits), the jury rendered a $74,738.90 verdict against W&O for breach of contract.  W&O's Rule 50(b) motion now asserts that the jury heard no evidence whatsoever that could support any component of its verdict.  This is not correct.

As explained in detail below, the Court should deny W&O's motion.  The jury heard more than adequate proof that Plaintiff was an intended third-party beneficiary of the contract that W&O breached.  The jury heard that W&O received notice and a reasonable opportunity to cure its breaches, but did not do so.  Finally, the jury heard evidence of over $366,000 in Plaintiff's damages caused by W&O's breach—significantly more than the jury ultimately awarded.

Certainly, W&O is displeased and disagrees with the jury's verdict.  But W&O cannot demonstrate that it is entitled to relief simply by ignoring all of Plaintiff's proof and proclaiming "no evidence!"  The jury had a sufficient evidentiary basis to decide each element of the breach of contract claim and render a verdict against W&O.  The Court should deny W&O's motion.

# II.    LEGAL STANDARD

Pursuant to Rule 50(b), the Court may allow the verdict to stand, order a new trial, or direct entry of judgment as a matter of law.  Fed. R. Civ. P. 50(b).  The Court does not weigh the evidence or assess the credibility of witnesses.  *Conwood Co. L.P. v. United States Tobacco Co.*, 290 F.3d 768, 781 (6th Cir. 2002).  Judgment as a matter of law "may be granted only if in viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material

1

fact for the jury, and reasonable minds could come to but one conclusion, in favor of the moving party." *Gray v. Toshiba Am. Consumer Prods., Inc.*, 263 F.3d 595, 598 (6th Cir. 2001). "Thus, while the district court has the duty to intervene in appropriate cases, the jury's verdict should not be disturbed simply because different inferences and conclusions could have been drawn or because other results are more reasonable." *Wheaton v. N. Oakmont Med. Ctr.*, 2006 WL 44163, at \*2 (E.D. Mich. Jan. 6, 2006).[1]

### III.    W&O'S MISSTATEMENTS OF THE TRIAL RECORD

At the outset, Plaintiff must address a large number of material omissions or misstatements in W&O's motion. For example, at least seven times W&O asserts that Plaintiff offered no evidence or proof at trial on certain points. The trial transcript belies those claims. W&O simply ignores, disregards, or fails to cite evidence in the record that does not support its motion.

W&O attempts to erect an inferential house of cards in an effort to establish that the jury's verdict is incorrect or inconsistent. W&O's conclusions, however, are not based on any reasonable inference but, rather, upon layers of unreasonable inference upon unreasonable inference or, in some instances, claims about evidence that are demonstrably incorrect. W&O takes such liberty with the facts that Plaintiff must set the record straight regarding the following:[2]

### Page 2:

**W&O Claims:** "The Construction Contract, as amended under Construction Addendum No. 1, only gave [Plaintiff] the right to approve final work."

**The Record Reflects:** Section 8.1 of the Construction Contract provides:

> 8.1    Restoration of the golf course shall include all necessary
> work such as soils, turf, irrigation, sand traps, cart paths, tee boxes,

---

[1]    In accordance with Local Rule 7.01(e)(3), all cited decisions that are unpublished or issued by a state court from outside Tennessee are attached as Exhibit 1.

[2]    Page references in this section are to W&O's Memorandum in support of its Rule 50(b) motion (D.E. 114).

2

> utilities, and any other components disturbed by the construction of the gravity sewer line. This work shall be performed by King's Creek Golf Course approved contractors which are familiar with all of the turf and irigation [sic] systems of the golf course.

(Pl.'s Ex. 4 at 108-109). Viewing the evidence in the light most favorable to Plaintiff, Plaintiff's representative Donald Henderson testified that the Construction Contract gave Plaintiff the right to approve all of the restoration contractors and <u>all</u> of the restoration work described above. (D.E. 111, Tr. at 54-55). The Addendum did nothing to change that. (D.E. 111, Tr. at 57-58).

As set forth in more detail in Section IV.B.1 below, at most, the Addendum only modified Plaintiff's rights with respect to the sod and irrigation contractors. Sod placement and irrigation repair were just two of many restoration components. Nothing in the Addendum modified Plaintiff's right to approve contractors to perform the remainder of the work. Moreover, W&O's counsel wrote a letter to Mr. Henderson in August 2015—10 months after the Addendum was prepared and circulated—that refers to sod and restoration contractors being approved by King's Creek Golf Course (*i.e.,* Plaintiff). (Pl.'s Ex. 62; D.E. 111, Tr. at 59-60).

## <u>Pages 2-3:</u>

<u>**W&O Claims:**</u>  "The Construction Contract between W&O and Spring Hill gave Spring Hill the contractual right to extend the construction timeline, whether it be by written change order or claim. . . . Although the project was *<u>informally extended</u>* beyond May 4, 2015 . . . ."  (emphasis added).

<u>**The Record Reflects:**</u> The Construction Contract unambiguously provides that "Contract Times may only be changed by a Change Order."  (Pl.'s Ex. 4 at 62). By definition, a Change Order is a document that is recommended by the engineer and signed by both the owner and contractor.  (*Id*. at 14). The project could not be, and was not, "informally extended" as W&O

contends. Testimony of both Tim Huddleston of W&O and project engineer Jerome Dempsey confirmed this fact. (D.E. 111, Tr. at 167; D.E. 112, Tr. at 67).

Section 12.02B of the Construction Contract provides that if the contractor wishes to request a change in the Contract Times, the contractor shall file a claim with the engineer in accordance with Section 10.05, which requires a written change order. (Pl.'s Ex. 4 at 62, § 12.02B). Moreover, the Construction Contract makes clear that no claim for adjustment in the Contract Times will be valid unless submitted in accordance with Section 10.05. (*Id.* at 56-57, § 10.05). The evidence established that Defendants did <u>not</u> extend the completion deadline for Phase I of the project beyond May 4, 2015.

## Pages 3-4:

**W&O Claims:** "As testified to at trial . . . [Plaintiff] did not allow W&O to even attempt to complete their work . . . . W&O was not given the opportunity to complete its scope of work and to restore the golf course."

**The Record Reflects:** Plaintiff gave W&O every opportunity to complete the work within the time promised in the Construction Contract. The extended completion deadline was May 4, 2015. Plaintiff did not hire the Turf Company until May 22, 2015. (D.E. 111, Tr. at 19). If W&O had completed its work by May 4, 2015, Plaintiff never would have hired the Turf Company. (D.E. 111, Tr. at 72). So, Plaintiff engaged an alternative restoration contractor *only after* W&O attempted and failed to complete the work on time (which it had promised to do).

## Page 6:

**W&O Claims:** "[Golf course superintendent Jed] Vinson testified that in comparison to 2014, the golf course was making approximately $40,000 more at that period of time than the golf course had in 2014."

**The Record Reflects:** W&O's mischaracterization of this testimony is particularly egregious. Mr. Vinson said no such thing. As he <u>actually</u> testified, the first page of Plaintiff's Exhibit 64 shows EBITDA of approximately $82,000 for the period from <u>January 2014</u> through <u>December 2014</u>. (D.E. 111, Tr. at 147-148; Pl.'s Ex. 64 at 1). The second page, however, contains figures from <u>May 2014</u> through <u>April 2015</u>. (*Id.*). In other words, eight of the same months are displayed on both pages. W&O fails to bring this to the Court's attention.

Mr. Vinson testified accurately that page 2 showed EBITDA of approximately $123,000. (D.E. 111, Tr. at 148). But that is for the period from May 2014 through April 2015. W&O suggests, incorrectly, that page 2 covers January 2015 through December 2015.

As the second page actually reflects, EBITDA for March 2015 (which included $48,793.94 in "Miscellaneous Income" – the vast majority of which was an allocated portion of the $199,000 easement payment) was $15,104.51. (Pl.'s Ex. 64 at 2). EBITDA for April 2015 was -$32,099.40. Deducting the irregular $48,793.94 in "miscellaneous income" (that was intended to compensate for pre-March 2015 lost profits), <u>the golf course lost $65,788.83 in March and April 2015</u>. (*Id.*).

Additionally, both Mr. Henderson and Mr. Vinson testified that rounds of golf played declined approximately 45% year-over-year while Plaintiff waited for W&O to complete the job. (D.E. 111, Tr. at 109-110, 130-131). Both also testified that memberships were down over this period "because half the golf course was closed, and members didn't know when it was going to open." (*Id.* at 109, 131). Moreover, Mr. Vinson unequivocally testified that from March through June 12, 2015, the golf course earned $194,247.92 less net income than the same period in 2014. (*Id.* at 131-134). W&O did nothing to rebut this testimony, which is completely inconsistent with W&O's assertion that the golf course made *more* money in 2015 than it did in 2014. W&O's claim

that trial evidence showed the golf course's profits increased approximately $40,000 in 2015 is demonstrably false.

<u>Pages 11-12:</u>

**W&O Claims:**  "Additionally, a contract is presumed to be executed for the benefit of the contracting parties and not for the benefit of third-parties. . . . [Plaintiff] provided no evidence to overcome this presumption."  "[Plaintiff] provided no evidence that the contract was entered into directly and primarily for the benefit of [Plaintiff]. . . . [Plaintiff] has offered no evidence that it is an intended third-party beneficiary. . . . [Plaintiff] has offered no evidence that it is an intended third-party beneficiary. . . . [Plaintiff] cannot produce any clear and direct evidence that [Plaintiff] was an intended beneficiary of the Construction Contract."

**The Record Reflects:**  The record is replete with evidence that Plaintiff is an intended third-party beneficiary of the Construction Contract.  Section 8.1 of the Supplementary Conditions expressly deals with restoration of the golf course.  (Pl.'s Ex. 4 at 108; *see also* D.E. 111, Tr. at 54-55).  This provision requires the contractor to contact Plaintiff prior to beginning work, to get the names of restoration contractors that Plaintiff would approve.[3]  (Pl.'s Ex. 4 at 108).  And it provides that restoration includes "all necessary work such as soils, turf, irrigation, sand traps, cart paths, tee boxes, utilities, and any other components disturbed by the construction of the gravity sewer line."  (*Id.*).  The specific identification of items such as sand traps, cart paths and tee boxes—*which are only found on golf courses*—constitutes "clear and direct evidence" that W&O and Spring Hill drafted the Construction Contract with an intention to benefit Plaintiff.

Section 13 of the Special Project Procedures also requires the contractor's pre-blast survey to "document the existing conditions of the golf course as this will have to be repaired to a

---

[3]  Testimony established that W&O never did this, which is one of several ways in which W&O breached the contract.  (D.E. 111, Tr. at 56).

condition equal to or better than what is in place prior to the commencement of construction."[4] (Pl.'s Ex. 4 at 93; *see also* D.E. 111, Tr. at 170). Additionally, Sections 14 (Daily Cleanup), 16 (Protection of Public and Private Property) and 17 (Tree Protection) of the Special Project Procedures all contain requirements for how W&O is to treat the golf course property—all of which could benefit only Plaintiff. (Pl.'s Ex. 4 at 94-95). Far from furnishing "no evidence," Plaintiff furnished the jury with abundant evidence that the Construction Contract was intended to benefit Plaintiff.

### Page 12:

**W&O Claims:** "[I]t is undisputed that at the time of the formation of the Construction Contract, [Plaintiff] was not even involved in the formation of the Construction Contract."

**The Record Reflects:** This was disputed,, and the jury heard evidence to resolve that dispute in Plaintiff's favor. Mr. Henderson testified that as early as June 9, 2014, he and Daniel Allen (then Spring Hill's infrastructure director) discussed elements of the Construction Contract such as the timing of construction and consequences for delay. (D.E. 111, Tr. at 43-44, Pl.'s Ex. 66). Mr. Allen also emailed Mr. Henderson a link to copies of the contract documents four days before the contract was signed. (Pl.'s Ex. 36). In subsequent emails, Mr. Henderson and Mr. Allen discussed numerous issues related to the Construction Contract. (*Id.*; D.E. 111, Tr. at 61-63).

### Pages 13, 15:

**W&O Claims:** "[T]here is no evidence that W&O breached the Construction Contract and if there was, there is no evidence that the alleged injured party, [Plaintiff], ever provided notice

---

[4]   This also establishes that Spring Hill entered into the Construction Contract, in part, to discharge the duty it owed to Plaintiff under the Grant of Sewer Easement (Pl.'s Ex. 5) to restore the golf course to a condition similar or equal to that existing at the commencement of construction.

and opportunity to cure." "[Plaintiff] decided to march on without providing W&O notice and opportunity to cure."

**The Record Reflects:**

*The Jury Heard Evidence That W&O Breached the Construction Contract:* In the Construction Contract, W&O promised to complete each phase within 120 consecutive calendar days. (Pl.'s Ex. 4 at 2; D.E. 111, Tr. at 53). Because Spring Hill issued notice to proceed on November 3, 2014, the original completion deadline was March 2, 2015. (D.E. 111, Tr. at 63-64). Defendants executed only <u>one</u> written change order extending the completion deadline to May 4, 2015. (Pl.'s Ex. 17; D.E. 111, Tr. at 65-66).

The jury heard that W&O did not complete Phase I by May 4, 2015. (D.E. 111, Tr. at 66). On that date, excavation was not complete, pipe laying was not complete, all of the manholes were not installed, the sewer line had not been tested, irrigation had not been repaired, and golf course restoration was not complete. (*Id*). In fact, project engineer Jerome Dempsey testified that as of July 20, 2015, W&O had still not completed at least 19 identified items of work. (Pl.'s Ex. 32; D.E. 111, Tr. at 189-190).

The jury heard that Mr. Dempsey and Darrell Bryson (Spring Hill's field inspector) reported concerns that W&O failed to use enough workers and equipment to get the job done on time. (D.E. 112, Tr. at 17-18). This, of course, was in breach of W&O's promise "to furnish all the materials, supplies, machinery, equipment, tools, superintendence, labor, insurance and other accessories" necessary to complete the project on time. (Pl.'s Ex. 4 at 1-2).

The jury also heard testimony that W&O left a "huge mess" behind during the construction—even though it had promised to "clean up all construction areas at the end of each working day." (D.E. 112, Tr. at 22; Pl.'s Ex. 4 at 94).

*The Jury Heard Evidence That Plaintiff Provided Notice and Opportunity to Cure:*  In April 2015, Mr. Henderson convened a meeting at Spring Hill's City Hall to discuss the lack progress of construction and restoration.  (D.E. 111, Tr. at 66-67).  He then began hosting weekly conference calls that included Tim Huddleston from W&O.  (*Id*. at 67).  Although Plaintiff used its "best efforts and continued communications," it could not get W&O to complete the work on time and consistent with the contract terms.  (*See* W&O's Ex. 25).

Additionally, Spring Hill (via Mr. Dempsey) gave W&O several notices and opportunities to cure the numerous problems before the Phase I completion deadline.  (*See*, e.g., Pl's Ex. 22 (email from Jerome Dempsey to Tim Huddleston dated April 1, 2015); Pl.'s Ex. 23 (Jerome Dempsey's summary of April 6, 2015 progress meeting)).  Daniel Allen and Mr. Dempsey contacted W&O "on numerous occasions" and asked them to add an additional crew to cure W&O's breach of its promise to furnish sufficient labor to complete the project on time.  (D.E. 112, Tr. at 23).  W&O was unwilling to do that.  (*Id.*).

All parties notified W&O that its performance under the Construction Contract was unacceptable, and W&O had a sufficient opportunity to cure any and all defects before Plaintiff hired the Turf Company eighteen days after the project completion deadline.

### Page 15:

**W&O Claims:**  "If W&O's work was found to be defective, Plaintiff was required to provide prompt and written notice – and it did not."

**The Record Reflects:**  The Construction Contract requires 7 days' written notice and a 30 day cure period *only if the owner wishes to terminate the contract*.  (Pl.'s Ex. 4 at 74-75).  Plaintiff never sought to terminate the contract.  Rather, Plaintiff wanted the opposite—for W&O to live up to the contract it signed.

Additionally, Section 13.01A of the Construction Contract provides only that the owner or engineer shall provide "[p]rompt notice" of all defective work. (Pl.'s Ex. 4 at 63). As discussed above, Plaintiff and Spring Hill both did so multiple times. And Section 13.06A provides that the contractor "shall pay all claims, costs, losses, and damages" arising out of or relating to the correction or removal of defective work, "including but not limited to all costs of repair or replacement of work of others." (*Id*. at 65).

## Page 17:

**W&O Claims:** "The Construction Contract and the Grant of Easement did not provide for . . . a certain date for time of completion . . . ."

**The Record Reflects:** The Construction Contract provides that each phase was to be completed within 120 consecutive calendar days following the issuance of a notice to proceed. (Pl.'s Ex. 4 at 2). As noted above, Defendants extended the completion deadline via written change order to May 4, 2015.

## Page 18:

**W&O Claims:** "[T]he financial statements on which [Plaintiff] relied upon were those of a separate legal entity, the King's Creek Golf Management, LLC, and [Plaintiff] did not put forth any evidence of the profit/loss arrangement between it and King's Creek Golf Management, LLC."

**The Record Reflects:** W&O made this same disingenuous argument to the jury and now tries the same tactic on this Court. As an initial matter, when cross examining golf course superintendent Jed Vinson, *W&O itself* elicited testimony of the profit/loss arrangement between Plaintiff and King's Creek Golf Management, LLC:

Q: Okay. And that's not a loss of SPE GO?

A: Not at the beginning. At the end of the year, it would be.

Q:      How does the end of the year work?

A:      Well, that's when they settle up the loss, and they would be
        – SPE GO would be liable for all the losses, not King's Creek
        Golf Management.  <u>The profits go to SPE GO, and the losses
        go to SPE GO.</u>  Depends on how the contract is written up
        with Billy Casper Golf as well.

(D.E. 111, Tr. at 147) (emphasis added).  And Mr. Vinson made clear on redirect that the financial

statements reflect the financial performance of the golf course (which Plaintiff owned) and not

some "separate legal entity" having no connection to Plaintiff.  (D.E. 111, Tr. at 160-161).  Even

under the most charitable interpretation, W&O again ignores testimony that is fatal to its argument.

Notably, W&O did not object to Plaintiff's admission of the financial statements into

evidence—as one would expect if Plaintiff truly tried to introduce irrelevant financial statements

from an unrelated company to prove its damages.  (D.E. 111, Tr. at 129).  Moreover, W&O's

Exhibit 48 (which W&O asked Mr. Vinson about on cross-examination) contains summary

financial data from the very financial statements W&O now claims are "of a separate legal entity."

(*Compare* D.E. 47-1 at 5-6, 36-37 *with* D.E. 110, Tr. at 52).[5]  In one breath, W&O adopted and

introduced the financial data of the golf course.  In the next, it attempted to mislead the jury and

the Court into believing that the financial data is not that of the golf course.

## Page 19:

**<u>W&O Claims:</u>**  "[G]iven that $13,317.94 was provided for the permanent and temporary

easement per Randall Button's Report (subject to [Doc. 93] and corroborated by the testimony of

Victor Lay, the remaining amount . . . was for business interruption."  (footnote omitted).

---

[5]    As W&O's counsel stated:  "The bottom four sections of that chart [W&O Ex. 49] indicate or are verbatim from
an affidavit proposed by Mr. Henderson I think in response to a motion for summary judgment."  (D.E. 110, Tr.
at 52).  Exhibit 2 to Mr. Henderson's affidavit contains the very same financial statements Mr. Vinson testified
about at trial. (*See* D.E. 47-1).

11

**The Record Reflects:**  The record reflects *nothing* related to Randall Button's appraisal other than the fact that Spring Hill ordered it to determine how much to pay Plaintiff for the Easement.  This is because W&O sought and successfully obtained the exclusion of Mr. Button's appraisal from the trial record.[6]  (D.E. 88; D.E. 110, Tr. at 9-10; D.E. 112, Tr. at 8-11).  It is astonishing that W&O now cites statements from Mr. Button's appraisal in support of its Rule 50(b) motion, after fighting persistently to keep the jury from receiving or learning about it.

Moreover, W&O's claim that Victor Lay testified that "$13,317.94 was provided for the permanent and temporary easement per Randall Button's Report" is incorrect. (D.E. 114 at 19). Mr. Lay testified this was merely the *initial offer* that Plaintiff rejected.  (D.E. 111, Tr. at 262). Additionally, the jury heard testimony that no one knew how much of the $199,000 Spring Hill paid Plaintiff was allocated to lost profits.  (*Id.* at 159).  And Daniel Allen testified that the $199,000 easement payment was a negotiated amount—indicating that there was no precise allocation to the permanent and temporary easement components.  (D.E. 112, Tr. at 12-13).

## IV.    ARGUMENT

W&O argues that the evidence presented at trial does not support the jury's verdict for breach of contract.  In order to find W&O liable to Plaintiff for breach of contract, the jury must have found that Plaintiff was an intended third-party beneficiary.  The evidence presented at trial provided a sufficient evidentiary basis for the jury to find that Plaintiff was an intended third-party beneficiary and that W&O breached the contract.  The Court should deny W&O's motion.

### A.    There Was Sufficient Evidence of Plaintiff's Third-Party Beneficiary Status

Defendants never disputed whether the Construction Contract is valid and enforceable. Rather, the central issue raised by W&O's motion is whether the proof at trial established that

---

6    W&O's exact words were: "[T]he appraisal performed by Randy Button is no longer relevant except to provide context to the negotiations between [Plaintiff] and the City of Spring Hill." (D.E. 88 at 4).

Plaintiff was an intended third-party beneficiary.  To determine this fact, Tennessee employs a three-part test:

> A third party is an intended third-party beneficiary of a contract, and thus entitled to enforce the contract's terms, if
>
> (1)    The parties to the contract have not otherwise agreed;
>
> (2)    Recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties; and
>
> (3)    The terms of the contract *or the circumstances surrounding performance* indicate either:
>
>> (a)    the performance of the promise will satisfy an obligation or discharge a duty owed by the promisee to the beneficiary; or
>>
>> (b)    the promisee intends to give the beneficiary the benefit of the promised performance.

*Owner-Operator Indep. Drivers Ass'n, Inc. v. Concord EFS, Inc.*, 59 S.W.3d 63, 70 (Tenn. 2001) (emphasis added).  In making this determination, the "primary focus is on the intent of the contracting parties."  *Id.*  Each case is examined on its own facts in light of the specific contractual arrangements and the circumstances under which the contract was made.  *Moore Const. Co. v. Clarksville Dept. of Elec.*, 707 S.W.2d 1, 9 (Tenn. Ct. App. 1985).

### 1.    The Court Did Not Err in Submitting Plaintiff's Third-Party Beneficiary Claim to the Jury

W&O now takes issue with the Court submitting the issue of Plaintiff's third-party beneficiary status to the jury.  (D.E. 114 at 10).  Where a party alleges error in jury instructions, the question is whether, taken as a whole, the instructions adequately inform the jury of the relevant considerations and provide the jury with a sound basis in law with which to reach a conclusion. *E.E.O.C. v. New Breed Logistics*, 783 F.3d 1057, 1074 (6th Cir. 2015).  Error in jury instructions warrants a new trial only if they are confusing, misleading, and prejudicial.  *Id*.  In contrast, harmless error in instructing the jury is not grounds for a directed verdict or new trial.  *Bar's*

*Prods., Inc. v. Bars Prods. Int'l Inc.*, 662 F. App'x 400, 407 (6th Cir. 2016). The alleged submission of a question of law to the jury is harmless error if the evidence reveals that the Court would reach the same conclusion as the jury. *Id.*

First, the Joint Proposed Jury Instructions and Verdict Form, *which W&O's counsel approved for entry*, included both an instruction on third-party beneficiary status and a verdict question asking the jury whether Plaintiff proved it is an intended third-party beneficiary of the Construction Contract. (D.E. 67 at 18, 26).

On the first day of trial (prior to *voir dire*) and again at the end of the second day, the Court asked the parties if any party wished to take up additional matters outside the presence of the jury. (D.E. 110, Tr. at 13, 15; D.E. 111, Tr. at 278). W&O did not raise the jury instruction issue at either opportunity. (*Id.*).

After Plaintiff's case-in-chief and following the denial of Defendants' Rule 50(a) motions, the Court specifically asked Plaintiff's counsel about the third-party beneficiary claim. (D.E. 112, Tr. at 32-33). After the Court stated that it would submit the third-party beneficiary claim to the jury, the Court gave the parties another opportunity to raise any other matters outside the jury's presence. (*Id.* at 33). W&O did not object to the Court's decision to send this claim to the jury, even though it was the exact subject of the Court's previous remarks.

Finally, at the charging conference on the third day of trial (and five months after jointly submitting proposed jury instructions containing an identical instruction), W&O objected. (*Id.* at 86-87). In other words, W&O never argued it was improper to submit the third party beneficiary claim to the jury until the last minute, when it became concerned that Plaintiff had submitted sufficient proof.

14

Far from being a "complex legal theory" (as W&O claims), whether or not a party is an intended third-party beneficiary is a simple three-step analysis that requires an inquiry into the terms of the contract and the circumstances surrounding its execution. *See Moore*, 707 S.W.2d at 9-10. Moreover, the jury heard ample evidence that Plaintiff was an intended third-party beneficiary of the Construction Contract.

### 2. The Construction Contract Does Not Exclude Third-Party Beneficiaries

The Construction Contract was admitted into evidence without objection and does not state that Defendants agreed to exclude third-party beneficiaries. (*See generally* Pl.'s Ex. 4). Trial testimony further established there is no such provision. (D.E. 111, Tr. at 56). W&O put on no proof to the contrary. The jury therefore heard sufficient evidence of this element.

### 3. Defendants Intended to Recognize Plaintiff's Right to Performance

As the Tennessee Supreme Court has stated, "[t]he third-party beneficiary concept arises from the notion that it is just and practical to permit the person for whose benefit the contract is made to enforce it against one whose duty is to pay or perform." *Owner-Operator*, 59 S.W.3d at 68 (citations and internal quotation marks omitted).

*The Four Corners of the Construction Contract Show Intent to Benefit Plaintiff:* The plain terms of the Construction Contract show that Defendants intended to recognize Plaintiff's right to have its golf course restored to its original condition in a timely manner. As referenced above in Section II, no fewer than five sections of the contract contain requirements such as restoration and daily cleanup that could be intended to benefit only the golf course owner—*i.e.*, Plaintiff. Thus, the plain terms of the Construction Contract show that Defendants intended to benefit Plaintiff.

*Plaintiff Communicated with Spring Hill Prior to Bidding:* Beyond the four corners, the circumstances surrounding the Construction Contract's execution established that Defendants

intended to recognize Plaintiff's right to have its golf course restored to a condition at least as good as that existing prior to construction. For example, beginning in June 2014, Plaintiff communicated with Spring Hill about the timeframe for the golf course restoration, the parties' relative rights and responsibilities, and the repercussions if the work was not completed on time during the winter months—all matters that were directly addressed in the Construction Contract. (D.E. 111, Tr. at 41-44, 46, 60; Pl.'s Ex. 66). And Plaintiff's representative Donald Henderson testified that Spring Hill sent him a copy of the bid form—*and the Construction Contract itself*— "a couple [of] weeks before" awarding it to Defendant W&O. (D.E. 111, Tr. at 52-53; *see also* Pl.'s Ex. 36). Thus, the circumstances surrounding the formation of the Construction Contract show that Defendants intended to benefit Plaintiff.

### 4. *W&O's Performance Satisfied an Obligation Spring Hill Owed to Plaintiff*

Additionally, the jury heard sufficient evidence that W&O's performance under the Construction Contract satisfied an obligation Spring Hill owed to Plaintiff. In the Grant of Sewer Easement, Spring Hill undertook an obligation to require its contractor to restore the golf course to a condition similar or equal to that existing at the commencement of construction.[7] (*See* Pl.'s Ex. 5 at 1). The Construction Contract contained nearly identical language: "The pre-blast survey shall also document the existing conditions of the golf course <u>as this will have to be repaired to a condition equal to or better than what is in place prior to the commencement of construction</u>." (Pl.'s Ex. 4 at 93) (emphasis added). And as mentioned above, Section 8.1 specifically addresses restoration of the golf course. (*Id.* at 108-109). Thus, the plain language of the contract that Mr. Dempsey drafted for Spring Hill shows that it was intended to satisfy Spring Hill's contractual obligation to restore Plaintiff's property.

---

[7] This third element focuses on the promisee's intent—here, Spring Hill—not the promisor's. *Owner-Operators*, 59 S.W.3d at 71.

W&O cannot meet its burden of showing that no reasonable jury could find that Plaintiff was an intended third-party beneficiary of the Construction Contract.

**B.      There Was Sufficient Evidence for the Jury to Find that W&O Breached the Construction Contract**

Under Tennessee law, the elements of a breach of contract claim are:  (1) the existence of an enforceable contract; (2) non-performance amounting to a breach of the contract; and (3) damages caused by the breached contract.  *Fed. Ins. Co. v. Winters*, 354 S.W.3d 287, 292 (Tenn. 2001).  There is no dispute regarding the existence or enforceability of the Construction Contract. Accordingly, Plaintiff will address only the elements of breach and damages.

*1.      The Jury Heard Ample Evidence of W&O's Material Breaches*

<u>*W&O Failed to Complete the Project on Time:*</u>  The jury heard testimony that W&O broke its promise to complete the project on time.  As set forth above, the extended deadline (which was never further extended by written change order) to complete Phase I of the Project was May 4, 2015.  Mr. Henderson testified, however, that as that date "[t]here was still a good bit of excavation and sewer line to be laid, manholes to be put in along the way, [and] testing to be done when the whole [irrigation] line was in."  (D.E. 111, Tr. at 66).  Additionally, "[t]he irrigation needed to be repaired and made operational again, and the restoration to the in-play area needed to be done." (*Id.*).  And when golf course architect Kevin Hargrave visited the site ten days later, "[t]here was a lot of work that still had to be done."  (*Id.* at 12).  In fact, Spring Hill's own engineer, Mr. Dempsey, testified that W&O had still not completed its portion of the restoration work as of July 20, 2015—months after both the original and extended completion deadlines.  (*Id.* at 190).

<u>*W&O Failed to Pay Plaintiff's Restoration Costs:*</u>  W&O also promised to "make satisfactory and acceptable arrangements with the owners of the damaged property . . . concerning its repair or replacement or payment of costs incurred in connection with the damage."  (Pl.'s Ex.

4 at 95). Trial testimony shows it did not. For example, both Mr. Henderson and Mr. Vinson testified that W&O damaged the golf course's irrigation lines, then refused to pay to have the golf course manually irrigated until the lines could be repaired. (D.E. 111, Tr. at 74-76, 141).

W&O also promised to restore every element of the golf course that was disturbed by construction, using King's Creek Golf Course approved contractors. (Pl.'s Ex. 4 at 108, § 8.1). W&O argues that the Addendum to the contract changed the right of Plaintiff to approve the restoration contractors. (D.E. 114 at 2). But that is not supported by the plain text of the Addendum, which provides: "As part of the golf course restoration, the contractor shall include in his bid a qualified sod installer and irrigation repair company to perform repair work of the golf course. Both shall have experience in golf course restoration work and shall be approved by the owner." (Pl.'s Ex. 38 at 1, § A.2) (emphasis added).[8]

Even if W&O were correct that the Addendum modified Plaintiff's ability to approve the sod installer and irrigation repair company (which Plaintiff does not concede), nothing in the Addendum modifies Plaintiff's ability to approve the contractor that would perform every other aspect of the restoration which, as Mr. Dempsey acknowledged, would not be performed by a sod installer or irrigation repair contractor. (D.E. 111, Tr. at 172-174). Plaintiff never approved W&O as a restoration contractor. (D.E. 111, Tr. at 55). And W&O refused to reimburse Plaintiff for the reasonable costs of The Turf Company, which was the golf course construction and restoration contractor that Plaintiff approved to perform the restoration work. (Id. at 73-74).

---

[8]     W&O argues that this provision completely eliminated Plaintiff's contractual right to approve the restoration contractors. (D.E. 114 at 2). An email that Tim Huddleston wrote seven months after the Addendum was signed, flatly contradicts this. (See Pl. Ex. 67 ("It is our understanding that per Addendum No. One that clarification was provided that we [W&O] were to contact the Golf Course prior to the bid for Irrigation and Sod Contractors. This was done."); D.E. 111, Tr. at 176-177).

W&O contends that Plaintiff should not recover because W&O could have performed the restoration work itself—if Plaintiff had just given it even more time. This is irrelevant. The Construction Contract did not require Plaintiff to wait around indefinitely for W&O to restore the golf course. Instead, it required W&O to include in its bid price the cost of hiring Plaintiff-approved restoration contractors.[9] (Pl.'s Ex. 4 at 108-109, § 8.1). W&O breached the contract by failing to do this, and failing to reimburse Plaintiff for the cost of hiring its approved restoration contractor.

*W&O Failed to Clean up the Job Site:* W&O also promised to clean up the construction areas at the end of each working day. (Pl.'s Ex. 4 at 94, § 14.1). Mr. Henderson and Mr. Allen both testified this was not done. (D.E. 111, Tr. at 126; D.E. 112, Tr. at 22).

Despite evidence of these material breaches, W&O argues that Plaintiff cannot recover because Spring Hill never "placed" W&O in default. (D.E. 114 at 14). Again, this is irrelevant. Formal "declaration" of a breach by the injured party is not an element of a breach of contract claim under Tennessee law. Even if it was, Plaintiff fulfilled this requirement by sending W&O a letter on May 22, 2015 identifying multiple breaches and referring to Plaintiff's "duty to mitigate its damages." (W&O's Ex. 25). The jury heard sufficient evidence to conclude that W&O materially breached the Construction Contract.

### 2. *Plaintiff Gave W&O Sufficient Notice and Opportunity to Cure*

W&O argues that Plaintiff should not recover because there is "no evidence" that Plaintiff gave W&O notice and an opportunity to cure. (D.E. 114 at 13-15).

The duty to give notice and an opportunity to cure is not "an unyielding requirement." *Forrest Const. Co., LLC v. Laughlin*, 337 S.W.3d 211, 231 (Tenn. Ct. App. 2009). The critical

---

[9]     W&O was the lowest bidder on all three phases of the project. The next lowest bid was over $1 million higher than W&O's bid. (Pl.'s Ex. 39; D.E. 111, Tr. at 164-165).

factor in determining whether a plaintiff has fulfilled its duty to mitigate (by giving notice and opportunity to cure) is whether the method it employed was reasonable under the circumstances existing at the time. *See Salley v. Pinckney Co.*, 852 S.W.2d 240, 244 (Tenn. Ct. App. 1992). The rule with respect to mitigation of damages "may not be invoked by a contract breaker 'as a basis for hypercritical examination of the conduct of the injured party, or merely for the purpose of showing that the injured person might have taken steps which seemed wiser or would have been more advantageous to the defaulter.'" *Id.* (quoting *Action Ads, Inc. v. William B. Tanner Co.*, 592 S.W.2d 572, 575 (Tenn. Ct. App. 1979)). Plaintiffs facing a probability of injury or loss as a result of another's wrong must be allowed "a wide latitude of discretion." *Id.*

W&O is not correct that Plaintiff gave no notice or opportunity to cure. As described in Section II above, prior to the May 4, 2015 extended deadline, both Plaintiff and Spring Hill gave W&O several notices of its breaches. (*See* D.E. 111, Tr. at 66-67; D.E. 112, Tr. at 23; Pl.'s Ex. 22; Pl.'s Ex. 23). And Plaintiff waited until May 22, 2015 to hire the Turf Company to perform the restoration work that W&O promised to have completed by May 4, 2015. Under the circumstances, the jury heard sufficient evidence to find that Plaintiff acted reasonably in giving notice and opportunity to cure.

### 3. *There Was Sufficient Evidence of Plaintiff's Damages*

W&O's final argument is that "Plaintiff's proof of damages was non-existent, inconsistent and/or so speculative that recovery on such proof must be barred." (D.E. 113 at 2; D.E. 114 at 17).

Uncertain and speculative damages are prohibited only when the *existence* of damages is uncertain—not when the *amount* of the damage is uncertain. *Cummins v. Brodie*, 67 S.W.2d 759, 765 (Tenn. Ct. App. 1983). All that is required is proof within a reasonable degree of certainty. *Buice v. Scruggs Equip. Co.*, 267 S.W.3d 119, 125-26 (Tenn. 1953).

a.       **The Jury Heard Adequate Proof of Plaintiff's Lost Profits Damages**

W&O first claims there is a "factual gap" as to whether the financial statements in Plaintiff's Exhibit 64 establish the golf course's lost profits. (D.E. 114 at 18). This is not correct, as golf superintendent Jed Vinson testified he had personal knowledge of these statements, which reflect the profits and losses of Plaintiff's golf course. (D.E. 111, Tr. at 145, 160-161). Moreover, Plaintiff's Exhibit 64 speaks for itself, and Mr. Vinson unequivocally testified that rounds of golf declined approximately 45% and the golf course earned $194,247.42 less net income from March 2015 through June 12, 2015,[10] compared the previous year. (*Id.* at 130-131, 134). Mr. Henderson gave similar testimony. (*Id.* at 109-110). Thus, there was a sufficient evidentiary basis for the jury to decide the extent of Plaintiff's lost profits damages.

b.       **The Jury Heard Adequate Proof of Plaintiff's Restoration Damages**

Mr. Henderson testified that as a direct result of W&O's numerous breaches, Plaintiff was forced to pay the Turf Company $157,000 to restore the golf course to its original condition—something W&O promise to have completed using contractors approved by Plaintiff. (D.E. 111, Tr. at 72-74, Pl.'s Ex. 4 at 108-109, § 8.1). He also testified that W&O refused to reimburse Plaintiff for that cost. (D.E. 111, Tr. at 73-74). Thus, there was a sufficient evidentiary basis for the jury to decide the extent of Plaintiff's restoration damages.

c.       **The Jury Heard Adequate Proof of Plaintiff's Property Damages**

Mr. Henderson also testified that W&O damaged the golf course's irrigation system and did not repair it until May 2015. (D.E. 111, Tr. at 74-75). But the golf course could not afford to wait until May to begin irrigation because fertilizer had to be applied earlier in the year. (*Id.*). Out of necessity, Plaintiff paid $18,000 to irrigate the golf course manually until the irrigation lines

---

[10]    The date Plaintiff sold the golf course.

were repaired. (*Id.* at 75-76). W&O refused to reimburse Plaintiff for these costs. (*Id.* at 76).

W&O argues that Plaintiff cannot recover these costs because it elicited testimony from Mr. Vinson on cross-examination that could lead to a different calculation. But that is not correct. The trier of fact decides which witnesses to believe, needs not give equal weight to conflicting testimony, needs not treat the testimony of each witness as indivisible, and resolves all questions of witness credibility. *N.L.R.B. v. Downslope Indus., Inc.*, 676 F.2d 1114, 1116 (6th Cir. 1982).

Moreover, the amount of damages is not controlled by fixed rules of law or mathematical formulas but instead is left to the sound discretion of the trier of fact. *Allied Waste N. Am., Inc. v. Weinberg, Wheeler, Hudgins, Gunn & Dial, LLC*, 2016 WL 7157609, at *7 (M.D. Tenn. 2016). Damages may be awarded in a breach of contract case even if it is impossible to prove the exact amount of damages (which is not the case here). *Id.* at *7 n.5. Although a party or the Court may not precisely understand a jury's verdict, the verdict is not infirm where there is sufficient evidence upon which the verdict can be based. *Id.* at *8.

Plaintiff presented proof that it suffered up to $366,247.42 in damages as a result of the Defendants' breaches of contract. *After asking for a calculator during deliberations*, the jury returned a verdict in favor of Plaintiff against W&O in the amount of $74,738.90. (D.E. 112, Tr. at 140, 144). Based on the proof at trial, that amount is well within the range the jury could have returned. W&O cannot meet its burden of showing that no reasonable jury could find that W&O breached the Construction Contract and Plaintiff was damaged in the amount of $74,738.90 as a result of such breach.

## C.    W&O's Motion for New Trial Should be Denied

In the alternative, W&O moves this Court to grant it a new trial pursuant to Federal Rule of Civil Procedure 59(a). In civil cases, a new trial will not be granted on grounds not called to

the court's attention during the trial unless the error was so fundamental that gross injustice would result. *United States v. Walton*, 909 F.2d 915, 924 (6th Cir. 1990). And no error is grounds for granting a new trial or setting aside a jury verdict unless it affects a party's substantial rights and justice requires. Fed. R. Civ. P. 61.

W&O has not clearly identified an issue in its Rule 50(b) motion to which it objected unsuccessfully at trial and which would affect its substantial rights. To the extent that W&O takes issue with the third-party beneficiary jury instructions, there was no error. But even if the Court disagrees, any error was harmless because the record is sufficient for the Court also to conclude that Plaintiff proved each element of the *Owner-Operator* test for intended third-party beneficiary status.

## V.     CONCLUSION

For the foregoing reasons, this Court should deny Defendants' Motion for Judgment as a Matter of Law and, to the extent not waived, its Motion for a New Trial. The jury's verdict should stand.

Dated:          March 28, 2018                    Respectfully submitted,

                                                  **NEAL & HARWELL, PLC**

                                                  By:     */s/ William J. Harbison II*
                                                          Stephen M. Montgomery (No. 26489)
                                                          Robert A. Peal (No. 25629)
                                                          William J. Harbison II (No. 33330)
                                                          1201 Demonbreun Street, Suite 1000
                                                          Nashville, TN 37203
                                                          (615) 244-1713
                                                          smontgomery@nealharwell.com
                                                          rpeal@nealharwell.com
                                                          jharbison@nealharwell.com

                                                  *Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that this the 28th day of March, 2018, a true and correct copy of the foregoing was served via the Court's CM/ECF system on the following:

| | |
|---|---|
| Gregory L. Cashion | Patrick M. Carter |
| J. Ross Hutchison | Middle Tennessee Law Group, PLLC |
| Smith, Cashion & Orr, PLC | d/b/a Wolaver, Carter & Heffington |
| 231 3rd Avenue North | 809 South Main Street, Suite 100 |
| Nashville, Tennessee 37201-1603 | Columbia, Tennessee 38401 |
| (615)742-8560 | (931)388-8868 |
| gcashion@smithcashion.com | pcarter@mtlawgroup.com |
| rhutchison@smithcashion.com | |
| | *Counsel for Defendant Spring Hill* |
| *Counsel for Defendant W&O* | |

                                                   */s/ William J. Harbison II*